# EXHIBIT B

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

Gersom Colorado,

       CIVIL DIVISION

    Plaintiff,

       Type of Pleading:

    v.

       **COMPLAINT**

Gravity Oilfield Services, LLC,

       No.: GD-21-009998

    Defendant

       **<ins>JURY TRIAL DEMANDED</ins>**


**Filed on Behalf of:**

Gersom Colorado
Plaintiff

Counsel of Record for this party:

Lanre Kukoyi, Esq.
PA I.D. No. 315955


Kukoyi Law Firm, LLC
510 Washington Ave.,
Carnegie, PA 15106
(412) 200-2440 Phone
(412) 502-5105 Facsimile

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

Gersom Colorado,

       Plaintiff,

     v.

Gravity Oilfield Services, LLC,

       Defendant

CIVIL DIVISION

Type of Pleading:
**COMPLAINT**

No.: GD-21-009998

**JURY TRIAL DEMANDED**

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, YOU MAY CONTACT THE OFFICE BELOW TO FIND OUT HOW YOU CAN HIRE A LAWYER.

IF YOU CANNOT AFFORD A LAWYER, THE OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Allegheny County Bar Association
11th Floor, Koppers Building
436 7th Avenue
Pittsburgh, Pennsylvania 15219
412-261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

Gersom Colorado,                             CIVIL DIVISION
    Plaintiff,

    v.                                    No: GD-21-009998

Gravity Oilfield Services, LLC,             **JURY TRIAL DEMANDED**
    Defendant.


### COMPLAINT

AND NOW COMES, the Plaintiff, Gersom Colorado, by and through his attorney, Kukoyi Law Firm, LLC and Olanrewaju Kukoyi, Esquire, and files this Complaint and in support thereof states as follows:

1. Plaintiff, Gersom Colorado, ("Plaintiff" or "Colorado") is a resident of Allegheny County, Pennsylvania.

2. Defendant, Gravity Oilfeild Sevices, LLC ("Defendant") is a corporation with an office at 100 Imperial Industrial Park Drive, Oakdale, PA 15071.

3. This action arises in part under 42 U.S.C. §2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§951 *et seq* and 43 P.S. §260.1.

4. Plaintiff is an African-American male and so is a member of a protected class.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff incorporates the foregoing paragraphs by reference herein as if same were set forth at length.

6. Plaintiff exhausted his administrative remedies under Title VII and applicable state law.

7. Plaintiff filed a timely written Charge of Discrimination (hereinafter "Charge") with the Equal Employment Opportunity Commission (hereinafter "EEOC").

8. The Charge was assigned case number 533-2021-00325 and was dual filed with the Pennsylvania Human Relations Commission (hereinafter "PHRC").

9. On or about May 24, 2021, EEOC issued Plaintiff a Notice of Dismissal and Right to Sue. It is attached as Exhibit A.

**FACTS**

10. On August 21, 2020, sometime between 7:30am-7:45am, after the regularly scheduled safety meeting, Louis Greggs ("Greggs) and another colleague, Dustin Sparber ("Dustin"), went into one of the back rooms (also known as the "water room") to take back some wiring from the panels they had not used the previous night.

11. Dustin was in the lead and as soon as he opened the door to the room he stopped rather than going in and asked "Lou, did you see this?" Greggs stepped forward and there, on a shelf facing the door that he would have passed through, was a sign that said "Blackicans lifes Don't fucking Matter!!! Fuck you."

12. Greggs was the only African American employee at Defendant company, while Plaintiff was the only Mexican employee.

13. Anybody that passed through the door would have seen the sign. The Friday morning meetings were generally from 7am for about 30 minutes to an hour.

14. Greggs took the sign to Daryl Cogley ('Daryl"), the branch manager and in no uncertain terms, requested that the perpetrator(s) be found and be dismissed, and left

4

work very upset.

15. Later in the day, a person that identified himself as John Nichols ("John"), called Greggs from the Corporate/Head Office of Gravity.

16. John apologized for the incident and then proceeded to tell Greggs that he had been a victim of racial profiling himself. According to John, he is (or was) a police officer and the profiling occurred when people wrote derogatory words on his police car (John is a Caucasian). He further informed Greggs that a situation similar to what happened to Greggs had occurred in a different location of Gravity's and he went to that location and was able to get to the bottom of it, and fired the perpetrator. He assured Greggs that he was going to come down to the Oakdale location within a week and conduct the investigation. He, however, failed to come despite repeated requests from Complainant and a couple of the other employees.

17. John called then called Plaintiff and after apologizing to Plaintiff, he proceeded to ask Plaintiff questions that seemed to suggest he was looking at Plaintiff as a potential suspect. For example, he sent Plaintiff a screen shot from the security camera showing Plaintiff driving his work truck with papers on his dashboard, and he wanted to know what the papers were.

18. He also asked Plaintiff what Plaintiff was seen putting in his boots on the camera. Plaintiff explained that he normally put plastic lining in the back of his work boots for support because the inside is ripped. John then stated that he used to do the same.

19. Plaintiff felt John was interrogating him as a suspect.

20. John also told him that he would be at our location within the week to conduct the investigation.

21. Another employee, Anthony Cretelli ("Anthony"), out of concern, asked Daryl at the weekly Friday morning meetings about John Nichols or anybody from the Corporate office coming down as promised for about a month.

22. After a couple of weeks or so, Anthony mentioned at the meeting that he actually called John himself, and John said he was still planning on being at the Oakdale location to investigate.

23. At one of the meetings, Daryl said he had spoken with John the previous day, and all that John asked him was "what was going on down there?", to which Daryl stated he responded that the situation was unchanged as the responsible person had not been found yet, then John said "okay, just checking."

24. On September 27, 2020, Daryl told Greggs that he had cameras installed in the back rooms to help prevent what occurred from happening again. However, when Greggs checked to confirm, he did not see any cameras in those rooms.

25. There are security cameras at Defendant Company works but there is not one in the water room. However, there are cameras showing the garage/shop, so it would have been easy to figure out who may have entered the water room.

26. Greggs subsequently found out from Cody Kline, mechanic, that the last employees at the facility on August 20, 2020 were Brandon Mann ("Brandon") and Ronald Baker ("Ronald").

27. When Brandon left the meeting, he walked into the building through a side door near the front and did not come out of the building through or near the front, as the meeting took place in the front and Greggs would have seen him if he had done so. At the conclusion of the meeting, everyone drifted to the back of the building to smoke and

hang around, but Greggs and Dustin went in to the building from the rear and as they were approaching the Parts room, Brandon came out of it and almost bumped into Greggs.

28. Greggs and Dustin then went from the Parts room into the oil room and finally the water room. They were the first ones in the water room after Brandon left it. Brandon would have had to walk by the shelf with the poster because that was the only way into the oil room, and then the Parts room.

29. Subsequent to the August 21 incident, Plaintiff has also seen a change in the assignment giving. Generally, a field tech or two remained behind to work in at the location each day while all others go out to work. Staying back meant less physically arduous work so it was preferred and prized. Therefore, it was done on a rotation, so Plaintiff and Greggs have remained back multiple times. However, after the August 21 incident, both Plaintiff and Greggs were always sent out.

30. At least one other Caucasian employee, Ronald Baker, was never sent out during this period.

31. They knew this when on October 29, 2020, someone from Corporate told Daryl that Ronald Baker had too many "shop hours".

32. In addition, to being sent out daily, Plaintiff also noticed that he and Greggs were usually given the most remote of service calls and multiple assignments outside the shop, believing it was an attempt to keep them away from the shop for the day. The daily assignment and the decision on who remained at the shop was made by Richard Spahr, Coordinator.

33. On September 28, 2020, Daryl spoke with Plaintiff about issues of tardiness Plaintiff

7

had had in the preceding couple of weeks. Plaintiff told Daryl that part of the difficulty he was dealing with was that he did not feel comfortable again working there due to the lack of resolution over the August 21 incident, despite the assurances to the contrary. Daryl told him that he emailed John several times to find out what was going on but most of them went unanswered, therefore he contacted Steve Ludwig (Regional Manager) to get him to intervene with John.

34. Due to the lack of resolution of the August 21, 2020 matter and the subsequent occurrences, Plaintiff felt compelled to resign his employment on November 6, 2020.

## COUNT I – Discrimination in violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. §2000e

1. Plaintiff incorporates the foregoing paragraphs by reference herein as if same were set forth at length.

2. The sign in the August 21, 2020 incident plus the intentionally shoddy investigation individually and collectively constitute a hostile work environment.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor, and against Defendant, and award all damages available to him at law and in equity.

Sincerely,

DATE: 2/15/2022

_____

Lanre Kukoyi, Esq.
Attorney for Plaintiff
510 Washington Ave.,
Carnegie, PA 15106
Office: 412-200-2440
Facsimile: 412-502-5105
Mobile (412) 725-7701

8

## Certificate of Compliance

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania; Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Signature:

Name: Olanrewaju Kukoyi, Esq.

Attorney No.: 315955

9